UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDWARD MINASKAR BEAMON,

                    Petitioner,                  Case No. 1:19-cv-144

v.                                        Honorable Robert J. Jonker

SHANE JACKSON,

                    Respondent.
_____/

## REPORT AND RECOMMENDATION

           This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Edward Minaskar Beamon is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Michigan.  Following a five-day jury trial in the Saginaw County Circuit Court, Petitioner was convicted of first-degree murder and conspiracy to commit first-degree murder, in violation of Mich. Comp. Laws § 750.316(a); assault with intent to commit murder (AWIM), in violation of Mich. Comp. Laws § 750.83; and three counts of use of a firearm during the commission of a felony (felony-firearm) second-offense, in violation of Mich. Comp. Laws § 750.227b.  On March 31, 2016, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 10 to 15 years for AWIM and life for first-degree murder and conspiracy to commit first-degree murder; to be served consecutively to three concurrent 5-year sentences for the felony-firearm convictions.

           On February 19, 2019, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

I.    Trial court abused its discretion[.]  The trial court abused its discretion by admitting "kites" into evidence that were "allegedly" sent to Barnes from [Petitioner].

II.   Prosecutorial Misconduct (improper arguments)[.]    The prosecutor's conduct during closing arguments during the trial of [Petitioner] were improper, that [sic] ultimately denied [Petitioner] due process.

III.  Insufficient Evidence (Insufficiency of Evidence).  The (record evidence) does not sufficiently support the conspiracy to commit 1st degree pre-meditated murder, assault w/intent to murder and felony-firearm convictions.

(Pet., ECF No. 1, PageID.5-8.)  Respondent has filed an answer to the petition (ECF No. 6) stating that the grounds should be denied because they are meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

**Discussion**

## I.    **Factual allegations**

On November 2, 2014, Petitioner and his cousin, Demont Barnes, were driving around Saginaw when they saw Dvaryohn McKinney and Tyrone Clark walking on the sidewalk. Barnes pulled over, Petitioner jumped out and chased McKinney and Clark on foot while shooting at them with a handgun.  Clark jumped a fence and was able to elude Petitioner; McKinney was shot and killed.

Petitioner returned to the car.  He and Barnes left the scene and later, when they returned to the scene, were involved in a hit-and-run car accident that led to their arrest.  Barnes entered a plea of guilty to a charge of second-degree murder and testified against Petitioner.

Barnes testified that, before the shooting, Petitioner had described an altercation at a nightclub between Petitioner's friends, on the one side, and a "group of guys" from the north

side of Saginaw, on the other.  He believed that Petitioner stopped, chased, and shot at McKinney and Clark because Petitioner believed—apparently a mistaken belief—that the two had been on the other side of the nightclub altercation.

Clark was not able to specifically identify the shooter.  Petitioner told police that he was driving and Barnes was the shooter.  Barnes' testimony was, therefore, critical in identifying Petitioner as the shooter.

The jury deliberated for over four hours.  They found Petitioner guilty of the charges mentioned above, but the jury found Petitioner not guilty of several other charges, including carrying a dangerous weapon with unlawful intent and felon in possession of a firearm as well as felony-firearm charges associated with both of those charges.

At first blush, there appears to be some inconsistency in the jury's verdict.  It would seem odd to hold Petitioner criminally responsible for the murder of Mr. McKinney, the assault on Mr. Clark, and the conspiracy, but then not hold him criminally responsible for possessing the weapon—he was admittedly a felon—or carrying it with unlawful intent.  However, examination of the trial record suggests that there was logic and reason behind the apparently inconsistent determinations.

It was undisputed that Petitioner and Barnes were the driver and passenger of the car from which the shooter emerged to kill McKinney and assault Clark.  It was, perhaps,  not so clear which cousin played which role.  Whether or not Petitioner pulled the trigger or drove, there was no doubt he at least aided and abetted the crimes of which he was convicted.  The jury's acquittal on the remaining charges may simply reflect that they were not convinced, beyond a reasonable doubt, that Petitioner held the weapon and pulled the trigger.

Petitioner appealed his convictions to the Michigan Court of Appeals.  In the brief Petitioner filed with the assistance of counsel, he raised the issues he raises in his habeas petition as issues I and III.  (Pet'r's Appeal Br., ECF No. 7-12, PageID.588-612.)  Petitioner also filed a *pro per* supplemental brief raising two additional issues, including the issue he raises in his habeas petition as issue II and one other that he does not assert in his petition.  (Pet'r's Supp. Appeal Br., ECF No. 7-12, PageID.640-661.)  By unpublished opinion issued June 13, 2017, the Michigan Court of Appeals denied relief and affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 7-12, PageID.557-566.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same issues he raised in the court of appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 7-13, PageID.690-697.)  By order entered February 20, 2018, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 7-13, PageID.689.)  Petitioner did not file a petition for certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.3.) Instead, he timely filed his habeas petition.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Sufficiency of the evidence

Petitioner contends that there was not sufficient evidence to convict him of the conspiracy, murder, and assault charges. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Even though the Michigan Court of Appeals referenced state court authorities when it announced the standard it would apply to Petitioner's sufficiency challenges, the court addressed those challenges consistently with *Jackson*'s direction.  The court identified the elements of each crime and then considered whether the evidence, viewed in a light most favorable to the prosecution, was sufficient to support the jury's finding beyond a reasonable doubt.

Petitioner challenged two of his six convictions on sufficiency grounds in the Michigan appellate courts: conspiracy to commit first-degree murder and AWIM.[1]  (Pet'r's Appeal Br., ECF No. 7-12, PageID.607-609; Pet'r's Appl. for Leave to Appeal, ECF No. 7-13, PageID.693.)  In this Court, however, he expands his sufficiency challenge to include the first-degree premeditated murder conviction as well.  (Pet., ECF No. 1, PageID.8.)  Nonetheless, the singular focus in his arguments regarding sufficiency is the conspiracy conviction.  (Pet'r's Memo.

---

[1] And, if he had been successful with regard to those challenges, the felony-firearm convictions based on those predicate felonies would have also been overturned.

of Law, ECF No. 1-1, PageID.32-33; Pet'r's Reply Br., ECF No. 8, PageID.783-786.)  I will address the sufficiency of the evidence with regard to each of the convictions Petitioner references in his petition.

A.   **Conspiracy**

The Michigan Court of Appeals adjudicated Petitioner's sufficiency challenge relating to the conspiracy conviction as follows:

> Defendant also argues that the evidence was insufficient to support his conviction for conspiracy to commit the first-degree murder.  Again, we disagree.  "A conspiracy is a partnership in criminal purposes."  *People v Blume*, 443 Mich 476, 481; 505 NW2d 843 (1993).  "Establishing a conspiracy requires evidence of specific intent to combine with others to accomplish an illegal objective."  *People v Izarraras-Placante*, 246 Mich App 490, 493; 633 NW2d 18 (2001), quoting *Blume*, 443 Mich at 481.  "[T]here must be proof demonstrating that the parties specifically intended to further, promote, advance, or pursue the unlawful objective."  *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997).  A conspiracy may include an implied, rather than an explicit, agreement between two or more persons to commit an unlawful or criminal act.  *People v Weathersby*, 204 Mich App 98, 111; 514 NW2d 493 (1994).  While each defendant must have agreed to "all the elements of the substantive crime," *People v Mass*, 464 Mich 615, 629 n 19; 628 NW2d 540 (2001), citing *United States v Rose*, 590 F 2d 232, 235 (CA 7, 1978), it is not necessary that each defendant have knowledge of all the ramifications of a criminal conspiracy.  *People v Hunter*, 466 Mich 1, 7; 643 NW2d 218 (2002).  "Direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties."  *People v Lowery*, 274 Mich App 684, 693; 736 NW2d 586 (2007), quoting *Justice*, 454 Mich at 347.
>
> In this case, Barnes testified that he and defendant were driving through various neighborhoods of the city and that defendant had told him of his desire to retaliate against someone for the incident at the nightclub.  Defendant told Barnes that he "wanted" the two men they saw walking and stated "there they go" before he got out of the vehicle to shoot them.  Clark testified that the car Barnes was driving approached to within five or six feet of the victims before stopping.  Barnes knew that defendant had a gun before he left the car.  Barnes also testified that he realized after the shooting that he had gone to school with McKinney as a child and that he "wouldn't have let [defendant] do it" had he seen McKinney's face.  Barnes stopped the car and, despite hearing gunshots, waited for defendant to return; defendant returned with a gun and Barnes drove him away from the shooting.  Therefore, it was reasonable for the jury to conclude from the evidence that Barnes knew of defendant's intent to shoot someone in retaliation for the club incident, and that Barnes stopped the car because defendant had located his targets.  "What the

8

conspirators actually did in furtherance of the conspiracy is evidence of what they had agreed to do." *Lowery*, 274 Mich App at 693, citing *Hunter*, 466 Mich at 9.

The evidence was sufficient to convict defendant of the crimes charged.

(Mich. Ct. App. Op., ECF No. 7-12, PageID.559) (footnote omitted).

Petitioner does not directly challenge the evidence identified by the appellate court as supporting Petitioner's conspiracy conviction.  Instead, he combs the transcript of Barnes' testimony and finds other testimony that supports the opposite conclusion.  There is certainly testimony that supports the opposite conclusion; indeed, Barnes testified: "I didn't conspire [to do] nothing."[2]  (Trial Tr. III, ECF No. 7-8, PageID.410.)  But, the fact that the record includes evidence that might support acquittal does not invalidate the appellate court's analysis.

Petitioner's approach turns the *Jackson* standard on its head on two levels.  First, Petitioner invites this Court to view the evidence in a light that favors him.  *Jackson* requires viewing the evidence in a light that favors the prosecution.  Second, Petitioner asks the Court to invade the province of the finder-of-fact by drawing inferences in Petitioner's favor—i.e., drawing an inference that Petitioner and Barnes did not agree to do that which they did—even though the inference that Petitioner and Barnes did agree is reasonable.

*Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts.  443 U.S. at 319.  In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'"  *Id*. at 655.  The Court described a reasonable inference as an inference that a rational jury could make from the facts.  Certainly, the inference identified by the court of appeals—that, based on the facts identified by the court of appeals, Petitioner and Barnes agreed to exact revenge

---

[2] It is noteworthy that Barnes made that statement in discussing why he had taken a plea.  He explained that even if he had beaten the first-degree murder charge, the evidence would have been sufficient to convict him of conspiracy to commit murder, even though he "didn't conspire [to do] nothing."  (Trial Tr. III, ECF No. 7-8, PageID.410.)

for the nightclub altercation by shooting McKinney and Clark—rationally flows from the underlying facts.  The inference is not compelled by those facts.  The inference may not even be more likely than not.  It is simply rational.  *Id*. at 656.  To succeed in his challenge, Petitioner must show that the identified inference is irrational.  He has not.

Petitioner has failed to show that the facts found by the appellate court are not reasonably supported by the record.  He has failed to show that the inferences the appellate court identified as supporting the conspiracy conviction are not rational.  And, Petitioner has failed to show that the appellate court's rejection of his sufficiency challenge regarding conspiracy is contrary to, or an unreasonable application of, *Jackson*, the clearly established federal law regarding sufficiency.  Accordingly, he is not entitled to habeas relief on this claim.

B.    **AWIM**

The court of appeals resolved Petitioner's sufficiency challenge relating to the AWIM conviction as follows:

> Assault with intent to murder is a specific intent crime that requires a finding that the defendant acted with the actual intent to kill.  *People v Taylor*, 422 Mich 554, 567-568; 375 NW2d 1 (1985); *People v Cochran*, 155 Mich App 191, 193-194; 399 NW2d 44 (1986).  Defendant argues that the prosecution did not present sufficient evidence that he intended to kill Clark.  We disagree.

> Barnes testified that he had been driving defendant around when they saw two men walking and defendant spoke of his desire to retaliate against them for a previous dispute at a club.  Defendant ran toward the two men while shooting at them, striking and killing McKinney.

> Defendant argues that the jury could only speculate from the evidence presented at trial that defendant was trying to kill Clark.  However, the intent to kill may be inferred from the use of a deadly weapon.  *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999); *People v Dumas*, 454 Mich 390, 403; 563 NW2d 31 (1997).  Moreover, Clark testified that defendant ran at both him and McKinney while shooting, and that he ultimately evaded defendant by jumping over a fence.  Defendant thus expressed a motive to kill Clark, chased Clark while firing in his direction, and fled the scene after killing McKinney.  "Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may reflect a consciousness of

guilt." *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014), citing *People v Unger*, 278 Mich App 210, 223, 225–227; 749 NW2d 272 (2008). Viewing this evidence and inferences arising from it in the light most favorable to the prosecution would allow a rational jury to conclude beyond a reasonable doubt that defendant intended to kill Clark.

(Mich. Ct. App. Op., ECF No. 7-12, PageID.558-559.)

Because Petitioner does not address the sufficiency of the evidence supporting the assault conviction in his habeas briefs, he does not respond to the facts or inferences that the court of appeals identified as supporting his assault conviction.  He does not contend that the facts identified by the court of appeals are not reasonably supported by the record and he does not explain how the court's determination of the issue was contrary to, or an unreasonable application of, *Jackson*.

Turning back to Petitioner's state court appeal brief, the only issue Petitioner raised regarding his assault conviction was that the prosecutor had failed to introduce sufficient evidence that Petitioner intended to murder Clark.  Petitioner argued that, "[o]ther than generalized testimony that [Petioner] got out of the car shooting" and did so as he was "running towards" McKinney and Clark, "there was no testimony that would support a rational inference that [Petitioner] was shooting at [Clark]."  (Pet'r's Appeal Br., ECF No. 7-12, PageID.608.)  The court of appeals recognized that jumping out of a car and chasing after someone while firing a gun at them supported a rational inference that the shooter intended to kill.  Petitioner's appeal argument depended on ignoring those facts.  That argument failed in the court of appeals; it fails here as well.  Petitioner is not entitled to habeas relief on his claim that there is insufficient evidence to support has assault conviction.

C.    **First-degree murder**

Petitioner's contention that there was insufficient evidence to support his first-degree murder conviction is raised for the first time in this Court.  Before the Court may grant

11

habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  Petitioner has not raised this sufficiency argument at any level of the state court.

Although Petitioner's failure to exhaust this claim precludes granting relief, it does not preclude denying relief.  28 U.S.C. § 2254(b)(2).  Following the direction of *Jackson*, this Court must consider the evidence in a light that favors the prosecution against the elements of the offense.  The Michigan Supreme Court states that the "elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation."  *People v. Oros*, 917 N.W.2d 559, 565 (Mich. 2018).  The evidence is undisputed that Mr. McKinney was intentionally killed by the person who jumped out of the car and chased McKinney while firing a handgun. Barnes's testimony is sufficient to establish that the person who took those actions was Petitioner. The evidence discussed above with regard to conspiracy, viewed in a light most favorable to the prosecution, supports a rational inference that Petitioner's actions in killing McKinney were premeditated and deliberate.  Accordingly, the evidence was sufficient to support finding Petitioner guilty of first-degree premeditated murder and Petitioner is not entitled to habeas relief on this claim.

## IV.    Prosecutorial misconduct

On direct appeal, Petitioner identified three specific instances of prosecutorial misconduct during his trial.  First, the prosecutor asked witness Barnes leading questions.  Second, the prosecutor made reference to a fact not in evidence during his closing argument.  Third, the prosecutor attempted to elicit sympathy from the jurors by referring to children, who could be heard in the background of the recording of a 911 call, as "agitated and excited."  In his petition and briefs, Petitioner abandons his arguments regarding leading questions and eliciting sympathy, choosing to focus instead on the prosecutor's reference to facts not in evidence during closing argument.  (Pet., ECF No. 1, PageID.7; Pet'r's Br., ECF No. 1-1, PageID.30-32; Pet'r's Reply Br., ECF No. 8, PageID.778-782.)

By way of background, Clark escaped the gunman by climbing over a fence.  (Trial Tr. II, ECF No. 7-7, PageID. 325.)  He ended up in a residential backyard.  He went up on the back porch and knocked on the door.

Clark was at the residence of Sheila Long.  Ms. Long was home that day with her mother, her four children, and ten nephews and nieces.  (*Id*., PageID.350.)  Seconds before Mr. Clark sought refuge in her home, she heard loud sounds, presumably gunshots.  The children, who had been playing outside, came running into the house.  Ms. Long locked the door.  Shortly thereafter, she heard Mr. Clark on the porch asking Ms. Long to call the police.  She did.

The prosecutor played a recording of Ms. Long's 911 call for the jury.  (*Id*.)  Ms. Long reported to the police that she saw the shooter who was wearing red and black.  (*Id*., PageID.351.)  At trial, she clarified that she saw someone running who was wearing red and black, but she could not say whether that person was the shooter or someone fleeing after they heard the shots.  The prosecutor suggested to Ms. Long that perhaps the children had told her that the shooter

was wearing red and black, even suggesting that one could hear in the background of the 911 call children referring to red and black.  (*Id*.)  Ms. Long said that was not the case.

The clothing colors were significant because the prosecutor introduced into evidence a picture of Petitioner taken later that day wearing red and black clothing.  It was one of the ways the prosecutor attempted to identify Petitioner as the shooter, rather than the driver.  Indeed, that was one of the first points he raised in his closing argument:

> Prosecutor:    Listen to a portion of the first—one of the first calls to 911, and listen to the people that are very excited and agitated there at that house on North 2nd Street and how they describe the shooter, and listen carefully to the young people in the background, all agitated and excited about what they had just seen outside.

(At 1:59 p.m., 911 audio recording played for the jury.)

> Prosecutor:    Kids in the background, all agitated and excited about what they've just seen outside.  Who was—what was the shooter wearing?  Shooter's wearing red and black.  And you look at Mr. Beamon as he walks into the Perkins Market around 5:30 or so, a couple hours after the homicide, get himself a little something there at the store, while Mr. Barnes stays outside in the car and he comes in.  Black hoodie, red shirt, matching the identification of those who were outside playing, who were excited, who were agitated, whose voices were captured on this 911 call.  These young people in the background who were the witnesses, while they were playing, looking through that fence into the parking lot of the school and they saw a man wearing black and red shooting. . .

(Trial Tr. IV, ECF No. 7-9, PageID.476-477.)  At that point, Petitioner's counsel objected because Ms. Long had not testified that the shooter was wearing red and black and the children had not testified at all; therefore, the prosecutor was stating facts that were not in evidence.  (*Id*., PageID.477.)  The trial court implicitly sustained the objection and cautioned the jury regarding the arguments of counsel:

> Court:    Ladies and gentlemen, you're going to decide what the facts of this case are, what the testimony was in this case.  If one of the lawyers or both of the lawyers says something that differs with your

14

recollection of what happened, you disregard what he has said and you follow the evidence as you see it.  Proceed.

(*Id*.)  The prosecutor then clarified that he was not urging the jurors to accept as fact his version of the evidence if, in fact, it was different than what they heard on the recording:

> Prosecutor:    You're going to have a chance to ask for the evidence, take it back into the jury room, and listen to it.  And that's absolutely what your job is, is to base your decision on what the evidence actually is.  And you can decide if you hear young people in the background talking or not.  It's either there or it isn't.  My personal perceptions really don't matter.  It's the evidence that matters.
>
> You are going to be the judges of the facts.  Nobody else.  You listen to it as much as you want to and decide whether or not there are some children in the background that are talking about the identification of the clothing of the person who was the shooter.
>
> The evidence is going to show you that they're talking about the shooter as a person wearing red and black.  I'm --you will be convinced of that, if you take the time to listen to it.

(*Id*.)

Petitioner contends that the prosecutor's reference to facts not in evidence—that the children witnessed the shooting and that the shooter wore red and black—during closing argument denied Petitioner a fair trial.  The Michigan Court of Appeals acknowledged that the prosecutor may have gone beyond the bounds of the evidence introduced at trial; but, the court also concluded that the trial court's subsequent cautionary instruction to the jurors protected Petitioner's right to a fair trial.  The appellate court reasoned as follows:

> It appears that the prosecution may have believed that the 911 recording captured the children stating that the shooter was wearing black and red, and wished to match this description to a videotape of defendant from later in the day.  However, even if the prosecution's statement was erroneous (as Long testified it was), defendant was not denied a fair trial, because the prosecution twice played the 911 call so that the jury could determine what was stated on the call, and the prosecution encouraged the jury to make its own determination of what it heard on the recording.  Further, instructions from the trial court to the jury may be "sufficient to eliminate any prejudice that might have resulted from the prosecutor's remarks."  *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).  Here, the trial

court instructed the jury to disregard lawyers' statements that were not an accurate representation of what had been presented at trial.  The trial court also instructed the jury on multiple occasions to decide the case based on the evidence, not the statements and arguments of the attorneys at trial.  "[J]urors are presumed to follow their instructions."  *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).  The trial court's instructions protected defendant's right to a fair trial even if the prosecution's statement was erroneous.

(Mich. Ct. App. Op., ECF No. 7-12, PageID.562-563.)

For Petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, he must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

A prosecutor is not limited to simply recounting the evidence during closing argument.  He may also argue reasonable inferences from the evidence.  *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000); *see also Young*, 470 U.S. at 8 n.5 (Court acknowledged as a useful guideline the American Bar Association Standard: "The prosecutor may argue all reasonable inferences from the evidence.").  Nonetheless, it is unquestionably improper for a prosecutor to

argue facts not in evidence.  *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004) (citing *Berger*, 295 U.S. at 78).

      "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

      Petitioner has failed to make the necessary showing.  If the 911 recording supported the prosecutor's statement, it was not misconduct for him to reference that fact during his closing.  If the 911 recording did not support the prosecutor's statement, the court of appeals determined that any prejudice was cured by the trial court's prompt remedial instruction, an instruction the jurors were presumed to have followed.  The court of appeals analysis is entirely consistent with the clearly established federal law outlined above.  Moreover, it is also clearly established federal law that "[a] jury is presumed to follow its instructions." *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Thus, whether or not the prosecutor overstepped the bounds of permissible argument here, the Michigan Court of Appeals' rejection of Petitioner's claim is neither contrary

to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

## V.    Kites as evidence

A "kite" is a written communication from an inmate.  *See, e.g., Hall v. Warren*, 443 F. App'x 99, 101 n.1 (6th Cir. 2011).  The prosecutor introduced through witness Barnes two kites Barnes claimed he received from Petitioner.  The kites indicated Petitioner's involvement in the events that led to Barnes' and Petitioner's detention.  Petitioner challenged the admissibility of the kites under Michigan Rule of Evidence 901, which states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Mich. R. Evid. 901(a).  The trial court concluded that the prosecutor had provided sufficient evidence regarding authentication to admit the kites.  (Trial Tr. III, ECF No. 7-8, PageID.397-398.)  The court determined that Petitioner's counsel's challenges to authenticity went to the weight to be accorded the evidence. (*Id.*)  The court of appeals concluded that the kites "were sufficiently authenticated" under the rule. (Mich. Ct. App. Op., ECF No. 7-12, PageID.560.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.

18

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Therefore, Petitioner's contention that admission of the kites violated Michigan Rule of Evidence is not cognizable on habeas review. The Michigan Court of Appeals has conclusively resolved it.

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.

Petitioner claims in conclusory fashion that the introduction of the kites violated his due process rights.  He also contends that admission of the kites was more prejudicial than probative.  That too is a state law violation—a violation of Michigan Rule of Evidence—that is not cognizable on habeas review.  Petitioner never explains how the admission of the kites is in conflict with a Supreme Court decision on a question of law or a Supreme Court decision that decided the issue differently on materially indistinguishable facts.  Therefore, he has not shown

that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law.

Moreover, the Michigan Court of Appeals' rejection of Petitioner's claim did not rest solely on its conclusion that the kites were admissible under Michigan Rule of Evidence 901. The appellate court went on to conclude that if admission of the kites was evidentiary error, it was not outcome determinative.  (Mich. Ct. App. Op., ECF No. 7-12, PageID.560-561.)  The conclusion that any error was not outcome determinative is the equivalent of concluding that the error was harmless. *Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016).  "State courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may grant habeas relief only where those determinations are objectively unreasonable." *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015)).

The court of appeals' conclusion that the admission of the kites, if erroneous, was harmless is objectively reasonable.  Certainly, the kites inculpated Petitioner in the November 2 shootings; but, Petitioner's involvement was never really in dispute.  Moreover, to the extent the kites suggested Petitioner played the more culpable role as the shooter, the jury's acquittal of Petitioner on the felon-in-possession and carrying with unlawful intent charges suggests that the jury was not swayed by the kites.  Therefore, Petitioner has also failed to demonstrate that the appellate court's determination that admission of the kites was harmless is contrary to, or an unreasonable application of clearly established federal law.

For all of the reasons, Petitioner is not entitled to habeas relief on his claim regarding admission of the kites.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:  April 10, 2020                              /s/ Ray Kent
                                                   United States Magistrate Judge


## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).